OUTTEN & GOLDEN LLP
Adam T. Klein (AK 3293)
Jack A. Raisner (JR 6171)
Carmelyn P. Malalis (CM 3350)
Lauren E. Schwartzreich (LS 8260)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

NICHOLS KASTER, PLLP
Donald H. Nichols, MN Bar No. 78918
(admitted *pro hac vice*)
Paul J. Lukas, MN Bar No. 22084X
(admitted *pro hac vice*)
Tim Selander, MN Bar No. 0387016
(*admitted pro hac vice*)
4600 IDS Center, 80 South 8th Street
Minneapolis, M 55402
Telephone: (612) 256-3200

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEWONE WESTERFIELD, CHARLOTTE MACHADO, JOHN MCMACKIN, NICOLE MCMACKIN, TRIG MAGELSSEN, PATRICIA KEMESIES, SAMUEL SANCHEZ,  STEPHEN CAGNACCI, DERRICK RUDOLPH, JOHN RA, MARK JOHNSON, LOUISE KAPLAN, RAFAEL GUTIERREZ, on behalf of themselves and classes of those similarly situated,<br><br>                    Plaintiffs,<br><br>    v.<br><br>WASHINGTON MUTUAL BANK,<br><br>                    Defendant. | No. 06-CV-2817 (CBA)(JMA) |

| | |
|---|---|
| CESAR C. JORDAN, individually and on behalf of all other similarly situated employees,<br><br>        Plaintiffs,<br><br> v.<br><br>WASHINGTON MUTUAL BANK,<br><br>        Defendant. | No. 08 Civ. 00287 (CBA)(JMA) |

**DECLARATION OF ADAM T. KLEIN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS, APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND APPROVAL OF PLAINTIFFS' PROPOSED <u>NOTICE OF SETTLEMENT AND CLASS ACTION SETTLEMENT PROCEDURE</u>**

I, Adam T. Klein, declare as follows:

  1. I am a member in good standing of the State Bar of New York, and a partner in the firm of Outten & Golden LLP ("O&G") in New York, New York. I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently to such facts.

  2. I am providing this declaration of counsel in support of Plaintiffs' Motion for Preliminary Approval of Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of Plaintiffs' Proposed Notice of Settlement and Class Action Settlement Procedure.

2

## TERMS OF THE SETTLEMENT AGREEMENT

3. Attached hereto as **Exhibit 1** is a true and correct, fully-executed copy of the Stipulation and Settlement Agreement between Plaintiffs and Defendant ("Settlement Agreement") in this action.

4. Attached as **Exhibit 2** is a true and correct copy of the Proposed Notice To Class Members Regarding Pendency of a Class and Collective Action and Notice of Hearing On Proposed Settlement.

5. Attached as **Exhibit 3** is a true and correct copy of the Proposed Consent to Join Settlement Form.

6. Attached as **Exhibit 4** are the Class Representative and Named Plaintiff General Releases.

## HISTORY OF THE LITIGATION

7. The plaintiffs are individuals formerly employed by Washington Mutual in locations across the country as residential mortgage loan consultants, also known as loan officers or loan consultants. On June 6, 2006, Named Plaintiffs Dewone Westerfield, Charlotte Machado and Patricia Kemesies commenced the *Westerfield* action in the Eastern District of New York as a putative class action under Fed. R. Civ. P. 23 and a collective action under 29 U.S.C. § 216(b). They sought unpaid overtime compensation, penalties, interest, liquidated damages, injunctive relief, and attorneys' fees.

8. In the original Complaint, Named Plaintiffs Westerfield, Machado and Kemesies alleged that Washington Mutual violated the FLSA and the state laws of California, Illinois and New York by failing to properly compensate them for all hours they worked beyond 40 hours each week. Named Plaintiffs Westerfield, Machado and Kemesies alleged that, each week, they

3

worked selling residential loans for Washington Mutual during regular business hours as well as during the mornings, evenings and on weekends – in excess of 40 hours per week. Plaintiffs also alleged that Loan Consultants consistently worked sixty (60) hour weeks, working late nights, weekends, and through their lunch hours. Additionally, Plaintiffs claimed that Washington Mutual maintained a nationwide policy of failing to record Loan Consultants' work hours and did not pay Loan Consultants for overtime hours worked.

9. Plaintiffs further alleged that Loan Consultants sold loans by filling out and submitting home loan applications on behalf of customers while in Washington Mutual offices.

10. Plaintiffs claimed that they spent only a small portion of their work time outside of the office performing tasks unrelated to loan sales. For example, they alleged that as Loan Consultants, they occasionally ate lunch with real estate agents, attorneys, or other potential referral sources, or engaged in other networking activities such as attending open houses and home closings.

11. Plaintiffs sought to prove that all class members within each state settlement class were subject to Washington Mutual's nationwide policies and practices, pursuant to which, Plaintiffs (1) performed common tasks of selling residential loans to customers by filling out and submitting loan applications on their behalf; (2) filled out and submitted loan applications from Washington Mutual offices or Plaintiffs' own homes; (3) regularly worked over 40 hours per week, including nights and weekends; (4) were not paid overtime; (5) were paid solely on commission; and (6) did not have their hours of work recorded by Washington Mutual.

12. In addition to the Named Plaintiffs, several other Loan Consultants joined *Westerfield* and *Jordan* as FLSA "opt-in" plaintiffs as part of the notice process approved by Judge Amon on January 31, 2007. A total of approximately 1,065 are currently involved in the

4

actions as Named Plaintiffs or Opt-in Plaintiffs (collectively "Plaintiffs") – in *Westerfield* (858) and *Jordan* (230). There are approximately 3,330 putative Rule 23 class members from the state-law classes located in California, Colorado, Illinois, Nevada, New Jersey, New York, Oregon, Pennsylvania, and Washington in *Westerfield*. There are approximately 700 putative collective action members in *Jordan*.

13. The parties engaged in substantial discovery, informal and formal, before agreeing to resolve the *Westerfield* and *Jordan* actions. In *Westerfield*, 764 plaintiffs produced executed interrogatories, 534 plaintiffs produced supplemental executed interrogatories, and 551 plaintiffs produced documents related to Washington Mutual.

14. Washington Mutual produced, and Plaintiffs' counsel reviewed, thousands of documents relating to Washington Mutual's pay policies, employee policies, Loan Consultants' job duties and Plaintiffs' personnel records. Washington Mutual also produced payroll data for more than 1,000 Plaintiffs and more than 3,000 class members that Plaintiffs' counsel analyzed.

15. On July 28, 2008, the Court ordered Washington Mutual to produce redacted loan applications, or Form 1003s, submitted by Plaintiffs during their employment with Washington Mutual. Plaintiffs were also seeking email and other electronic information from Washington Mutual while settlement discussions took place.

16. Washington Mutual requested up to 300 depositions of Opt-in Plaintiffs and corresponding depositions of Washington Mutual managers – before the Plaintiffs moved for class certification.

17. The Parties' counsel traveled to 17 states to take or defend a total of 57 Plaintiff depositions, 17 depositions of Loan Consultants' managers and supervisors, and depositions of two Rule 30(b)(6) witnesses.

5

18. On July 7, 2008, the Court ordered Washington Mutual to produce the names and contact information for former managers and permitted Plaintiffs to depose them in conjunction with the Plaintiff depositions.

19. On September 25, 2008, anticipating the collapse of Washington Mutual, the FDIC seized Washington Mutual. The following day, the Court granted Washington Mutual's emergency application seeking a stay in the *Westerfield* action. On October 8, 2008, the Court extended the stay in proceedings to allow Defendant to determine the identity of the client and to assess what, if any, liability JPMorgan Chase Bank, N.A., had in relation to these litigations.

20. On January 23, 2009, the Court officially lifted the stay without resolving the pending discovery disputes and Plaintiffs' request to file a motion for conditional certification in the *Jordan* matter.

21. On May 5, 2009, the FDIC issued letters to the Named Plaintiffs in *Westerfield* and *Jordan*, disallowing their claims against the FDIC and confirming that their claims against Washington Mutual are a contingent liability of JPMorgan Chase Bank, N.A.

22. The parties reached this settlement under the supervision of an experienced employment mediator, Michael E. Dickstein of Dickstein Dispute Resolution/MEDiate, after three mediation sessions with two other experienced mediators failed over the course of almost two years.

23. In an attempt to resolve the *Westerfield* action, the parties attended their first mediation session in New York, New York on July 24, 2007, with the assistance of experienced employment mediator Hunter Hughes of Rogers & Hardin, LLP. The parties exchanged information, including some payroll data which the parties analyzed and for which Plaintiffs' counsel obtained the assistance of a professional statistician. After a full day of negotiating

without a resolution, the parties and Mr. Hughes agreed to reconvene the mediation in San Francisco, California on August 14, 2007. Despite that second session, the parties were unable to reach an agreement and thereafter continued to aggressively pursue discovery in *Westerfield*, while Plaintiffs also filed the *Jordan* action.

24. In December 2008, during the Court's stay of discovery in both actions, the parties attempted mediation of both *Westerfield* and *Jordan*. This time the parties enlisted experienced employment mediator, Joan S. Morrow, to assist with their mediation in Washington, D.C. from December 17 through 19, 2008. In preparation for the mediation sessions with Ms. Morrow, the parties analyzed deposition testimony and documentary evidence, and further outlined and debated evolving pertinent case law. Nevertheless, the three-day mediation session ended without agreement.

25. On January 23, 2009, the Court lifted the stay of discovery in *Westerfield*, and the parties again agreed to engage in a fourth mediation session, which took place in Los Angeles, California with the assistance of Mr. Dickstein. After a full day of mediation that extended late into the evening, the parties reached an agreement on March 26, 2009 and executed a Memorandum of Understanding ("MOU") setting forth the key material terms to the settlement.

26. The proposed Settlement resolves all claims brought in this Litigation. Specifically, the Settlement provides that Defendant will pay $38,000,000 to compensate the Named Plaintiffs and the Class Members for unpaid wages, interest, and reasonable attorneys' fees and costs. Class counsel will request, and Defendant will not oppose, an award of costs (estimated at $500,000) and fees of $11,400,000 or 30% of the total settlement amount. This amount is very reasonable and is lower than attorneys' fees and costs awards in similar cases in New York. In addition, Class Counsel anticipate additional work on this matter, including

supervision of Class Notice, responding to Class Member inquiries, obtaining final approval of the settlement, and monitoring the distribution to Class Members.

27. The Settlement provides that Class Members will receive settlement awards based on the following criteria: statutory claims, damages, dates of employment as a Loan Consultant, and an average of ten (10) hours of overtime per week. Defendant's payroll and personnel records show that the proposed class in this case has approximately 5,000 members. After allowance for payment of attorneys' fees and costs, including the costs of the Claims Administrator, we estimate that each class member will receive an average total of approximately $5,000.

## BACKGROUND AND EXPERIENCE OF CLASS COUNSEL

28. Class Counsel include Nichols Kaster, PLLP ("Nichols Kaster") and Outten & Golden LLP ("O&G"). O&G is a 25+ attorney firm based in New York City that focuses on representing plaintiffs with a wide variety of employment claims, including claims of individual and class-wide violations of wage and hour laws, discrimination and harassment based on sex, race, disability, or age, as well as retaliation, whistleblower, and contract claims. Since I joined O&G in 2000, I have been engaged almost exclusively in the prosecution of large wage and hour class and collective actions involving unpaid regular and overtime wage claims of employees, and employment discrimination class actions arising under Title VII of the Civil Rights Act of 1964.

29. I received a B.S. from the Cornell University School of Industrial and Labor Relations in 1987 and a J.D. from Hofstra University in 1990.

30. I was admitted to the bar of the State of New York in 1991. I am also admitted to the bars of the United States District Courts for the Southern and Eastern Districts of New York and the United States Courts of Appeals for the Second and Eleventh Circuits.

31. From 1991 until 1996, I was employed by Levy, Davis, Maher & Klein LLP, first as an associate, and then as a partner as of 1996. In January 2000, I joined O&G as a partner. I presently chair the firm's class action practice group.

32. I am a member of the American Bar Association, where I am the plaintiff's co-chair of the Equal Employment Opportunity ("EEO") Committee of the Labor and Employment Section of the American Bar Association. The EEO Committee is the largest committee within the Section. I am also a member of the Committee on Equal Employment Opportunity and a member of the Committee on Technology of the Section of Labor & Employment Law and the Class Action and Derivative Suits Committee of the Section of Litigation. I served as the plaintiff's co-chair of the Technology Committee and plaintiff's co-chair of the Federal Law Clerks Training Program of the CLE Committee. I frequently write on issues relating to employment law, class actions, and the emerging use of technology in litigation. In addition, I serve on the Board of Directors of the Lawyers' Committee for Civil Rights Under Law and am also a member of the Federal Bar Council, a Fellow of the American Bar Foundation, a member of the Advisory Board of the Labor and Employment Law Program and Board of Directors of the Alumni Association of the School of Industrial and Labor Relations at Cornell University, and a member of the Advisory Board of the National Wage and Hour Clearinghouse. I am listed in both Best Lawyers in America and New York's Super Lawyers – Manhattan Edition.

33. I am a frequent lecturer on issues involving employment law. I have lectured on employment-related issues at the annual meetings of the American Bar Association and the

9

National Employment Lawyers Association and at other programs, including the Law Education Institute, National CLE Conference on Labor & Employment Law; Columbia University Law School; New York University Law School; Georgetown University Law School, the Federal Judicial Center; U.S. Department of Labor, Training Program for Regional Solicitor's Office; the Second Circuit Staff Training Program; and the New York State Bar Association, the Association of the Bar of the City of New York.

34. O&G frequently represents nation-wide classes of employees in Fair Labor Standards Act litigation, as well as state-wide class-actions filed under the New York Labor Law ("NYLL") §§ 650 *et seq*. I have litigated numerous wage and hour class action lawsuits, including: *Torres v. Gristede's Operating Corp.*, No. 04-CV-3346, 2007 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 29. 2006); *Damassia v. Duane Reade, Inc*., 04 Civ. 8819, 06 Civ. 2295, 250 F.R.D. 152, 165 (S.D.N.Y. 2008); *Stefaniak v. HSBC Bank USA, N.A.*, No. 1:05-CV-720 S, 2008 U.S. Dist. LEXIS 53872 (W.D.N.Y. June 28, 2008); *Gilliam v. Addicts Rehab. Ctr. Fund*, 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. March 24, 2008); *Diaz v. Scores Holding Co*., 07 Civ. 8718, 2008 U.S. Dist. LEXIS 38248 (S.D.N.Y. May 9, 2008); *Hens v. ClientLogic Operating Corp*., 05-CV-381S, 2006 U.S. Dist. LEXIS 69021 (W.D.N.Y. Sept. 26, 2006); *Khait, et al*., *v. Whirlpool Corp., et al*., No. 06-6381 (RRM)(VVP) (E.D.N.Y.); *Nitzberg v. Citicorp Investment Serv., Inc.*, No.: 604423/05 (NY Sup. Ct., NY Cty); *Rosenburg, et al., v. IBM Corp.,* No. C06-0430 (PJH) (N.D. Cal.); *Hernandez, et al. v. The Home Depot Inc.*, No. CV-05 3433 (ERK) (SMG) (E.D.N.Y.); *Day, et al. v. Control Assoc.,* No. 04 CV-07125 (LAK)(THK) (S.D.N.Y); *Clarke, et al. v. JP Morgan Chase & Co*. No. 04601519 (NY Sup. Ct., NY Cty); *Fouyolle v. JP Morgan Chase & Co*., No. 04-2219 (S.D. Tex.); *Wilson Cole, et al. v. Global Finan. Serv. of Nevada*, 05 Civ. 10011 (JGK)(S.D.N.Y); *Lamons, et al., v. Target Corp.*, CV 04-

10

0260 (ILG) (SMG) (E.D.N.Y); *Fei, et al. v. WestLB*, 07 Civ. 8785 (HB) (S.D.N.Y.); *Smith et al. v. Citigroup*, 07 Civ. 1791 (JG)(MRL) (E.D.N.Y.); *English et al. v. Ecolab, Inc.*, 06 Civ 5672 (PAC) (S.D.N.Y.); *Ansoumana, et al. v. Gristedes, et al.,* 00 Civ. 0253 (AKH) (S.D.N.Y.). This list is not exhaustive.

35. Under my supervision, O&G successfully prosecuted *Mohney v. Shelly's Prime Steak Stone Crab & Oyster Bar*, Case No. 06 Civ. 4270 (PAC), a wage and hour class and collective action. On December 15, 2008, Judge Crotty granted preliminary approval of a class action settlement. A true and correct copy of the Order Granting Plaintiffs' Motion for Preliminary Approval of Settlement is attached hereto as **Exhibit 7.**

36. Courts have repeatedly found O&G to be adequate class counsel in wage and hour class actions[1] and in other employment law class actions.[2]

---

[1] *See e.g., Damassia*, 250 F.R.D. at 165 (appointing O&G as class counsel on the basis of its "experience[] in handing wage and hour class actions and . . . knowledge of the applicable law"); *Gilliam*, 2008 U.S. Dist. LEXIS 23016, at *6 (S.D.N.Y. March 24, 2008) ("[O&G] ha[s] substantial experience prosecuting class action cases involving wage and hour claims"); *Stefaniak*, 2008 U.S. Dist. LEXIS 53872, at *8 (O&G "are experienced in prosecuting and settling employment-based class and collective actions, including wage and hour matters," "possess the experience and ability to represent effectively the class's interests," and "[have] adequately represented the class in this action.") (internal brackets and citation omitted); *Torres*, 2006 U.S. Dist. LEXIS 74039, at *49 ("[O&G] is qualified, experienced, and generally able to conduct the [class wage and hour] litigation.") (internal quotation marks omitted); *Rosenburg*, 2007 U.S. Dist. LEXIS 53138, at **5-6 (N.D. Cal. July 12, 2007) (appointing O&G as class counsel in wage-and-hour class action); *Ansoumana*, 201 F.R.D. 81, 87 (S.D.N.Y. 2001) (O&G is "experienced and well-qualified in the fields of labor law and class litigation and, in particular, wage-and-hour class litigation"); *Tillman v. GEICO*, 011538-03 (N.Y. Sup. Ct. Nassau County) (Order granting certification of a settlement class and final approval of a class action settlement) (a true and accurate copy is attached as **Exhibit 8**); *Tavarez v. Central Locating Serv., Ltd., Corp.*, 11916-06 (N.Y. Sup. Ct. Queens County) (Order approving class action settlement) (a true and accurate copy is attached as **Exhibit 9**).

[2] *See*, *e.g.*, *Jaffe v. Morgan Stanley & Co.,* No. C 06-3903, 2008 U.S. Dist. LEXIS 12208, at *23 (N.D. Cal. Feb. 7, 2008) (O&G has "extensive experience and expertise in prosecuting employment discrimination class action cases"); *Amochaev v. Citigroup Global Markets, Inc.*, No. C-05-1298**,** 2007 U.S. Dist. LEXIS 13154, at *6 (N.D. Cal. May 1, 2008) ("Plaintiffs'

37. Co-Class Counsel Nichols Kaster is a 20+ attorney firm with extensive experience in class action and wage and hour litigation. The Firm began as Don Nichols' private firm in 1974 and has been representing employees almost exclusively for 15 years. A large portion of Nichols Kaster's practice is concentrated on representing employees in class and collective actions. Nichols Kaster has represented thousands of employees in such cases and currently is counsel of record in over fifty class or collective cases across the country. The vast majority of these cases are wage-and-hour cases.

38. Donald H. Nichols is an experienced employment lawyer and trial lawyer. He is licensed in Minnesota and New York and has been practicing law for over thirty years. Paul J. Lukas is a partner with Nichols Kaster and is an experienced trial lawyer. Since the year 2000, Mr. Lukas's practice has concentrated on litigating class and collective actions, mostly in the wage-and-hour area. Tim C. Selander is an associate with Nichols Kaster, who is licensed in Minnesota and Florida.

39. Courts have repeatedly found Nichols Kaster to be adequate class counsel in wage and hour class actions.[3]

---

counsel are a group of experienced litigators, several of whom specialize in employment discrimination matters.") (a true and accurate copy is attached as **Exhibit 10)**.

[3] *Harlow v. Sprint Nextel Corp.*, 254 F.R.D. 418, 425 (D. Kan. 2008) ("After reviewing the record, the court is satisfied that . . . Nichols Kaster, PLLP . . . satisfy[ies] these criteria and will adequately represent the interests of the class as counsel."); *Sibley v. Sprint Nextel Corp.*, 254 F.R.D. 662, 677 (D. Kan. 2008) (same); *Carter v. Anderson Merchandisers, LP*, 2008 WL 4948489 at *8 (C.D. Nov. 18, 2008) ("Plaintiff has demonstrated sufficiently that his counsel [Nichols Kaster] will represent the proposed classes adequately. Counsel has identified and investigated the claims in this action, has extensive experience handling class actions similar to this one, has demonstrated knowledge of the applicable law, and has adequate resources to represent the proposed classes."); *Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 574 (C.D. Cal. 2008) (Nichols Kaster "has identified and investigated the claims in this action, has extensive experience handling class actions similar to this one, has demonstrated knowledge of the applicable law, and has adequate resources to represent the proposed classes."); *Kasten v. Saint-Gobain Performance Plastics Corp.*, 556 F.Supp.2d 941, 960 (W.D. Wis. 2008) ("Under [the

**FAIRNESS AND ADEQUACY OF THE PROPOSED SETTLEMENT**

40.     Class Counsel have assessed the risks and inherent delays if plaintiffs were to continue with the litigation. Based on my experience as set forth above, I believe that it is reasonable to expect that the case could take five to seven years to litigate through to a final lower court judgment and an appeal, at a cost in the range of ten to fifteen million dollars in legal fees and costs. In my professional opinion, the proposed settlement is fair, reasonable and adequate. This judgment is based upon a thorough analysis of the strengths and weaknesses of the case, which is founded on extensive discovery and investigative fact-finding in this case as well as Class Counsel's joint experience.

41.     Since the filing of the initial Complaint in this action, Class Counsel have undertaken substantial discovery and investigative efforts, including exchanging written document requests, reviewing extensive data and documents produced by Defendant and Plaintiffs, interviewing putative class members, defending and taking more than 60 depositions, and collecting approximately dozens of sworn affidavits. Class Counsel have undertaken considerable expense in litigating this matter. Class Counsel have prosecuted this action vigorously and have been willing and continue to be willing to expend all resources necessary to vigorously prosecute the action.

42.     Class Counsel have conducted extensive legal research as to the compensable time issues in this case, and the damages available for violations of the FLSA and the various state wage and hour laws. Class Counsel also analyzed settlements in similar cases as

---

Rule 23(g)]  factors, plaintiffs' lawyers [Nichols Kaster] are clearly adequate."); *Alberts v. Nash Finch Co.*, 245 F.R.D. 399, 411 (D. Minn. 2007) ("The Court has examined [Nichols Kaster's] background and qualifications and is fully satisfied that he will prosecute this action competently and vigorously."); *Stewart v. CenterPoint Energy Resources Corp.*, 2006 WL 839509, at *1

benchmarks.  Class counsel spoke and conferred regularly about discovery developments and to coordinate their litigation strategy.

## COURTS HAVE GRANTED APPROVAL IN A SIMILAR CASE

43. Attached as **Exhibit 5** is a true and correct copy of an Order in *Rosenburg v. Int'l Bus. Machines*, CV 06-00430 (PJH) (N.D. Cal. Jan. 11, 2007), (1) Conditionally Certifying Classes and Collective Action, (2) Granting Preliminary Approval to Proposed Class Action Settlement and Plan of Allocation, (3) Directing Dissemination of Notice and Claim Form to the Class, (4) Approving Releases and (5) Setting the Date for Fairness Hearings and Related Dates.

44. Attached as **Exhibit 6** is a true and correct copy of an Order in *Rosenburg v. Int'l Bus. Machines*, CV 06-00430 (PJH) (N.D. Cal. July 12, 2007), (1) Confirming Final Certification of Settlement Classes and Collective Action; and (2) Granting Final Approval to Class Action Settlement.

## THE AGREED-UPON ATTORNEYS FEES ARE REASONABLE

45. Based on my extensive experience litigating and settling employment class actions in general, and wage and hour class actions in particular, recovery of thirty percent of the common fund as attorneys' fees is reasonable under standards applied by New York courts.  This is particularly so given the excellent results achieved, and the contingent risk involved in this case.

46. The attorneys' fees requested will be split among the two law firms serving as Class Counsel.

## SETTLEMENT NOTICE AND ADMINISTRATION

---

(D.Minn. March 28, 2006) ("Plaintiffs' Lead Counsel [Nichols Kaster] are qualified to represent the Class").

47. The parties are collecting bids from settlement administrators. The administrator's fee will come out of the class settlement.

**THE REACTION OF THE CLASS TO THE SETTLEMENT HAS BEEN POSITIVE**

48. Although notice of the settlement has not yet issued to the class, word of the settlement has spread. Plaintiffs' counsel has taken calls from dozens of class members, all of whom have reacted positively to the settlement. Additionally, all 15 Named Plaintiffs support the settlement. Although the Court should more fully analyze this factor after notice issues and class members are given the opportunity to opt-out or object, it weighs in favor of preliminary approval. All three of the Named Plaintiffs support the settlement, as evidenced by their signatures on the Settlement Agreement.

I declare under penalty of perjury under the laws of New York and the United States that the foregoing is true and correct.

Executed this 18th day of June, 2009, at New York, New York.

      /s/ Adam T. Klein
Adam T. Klein
**Outten & Golden LLP**
3 Park Avenue, 29th Floor
New York, NY 10016
(212) 245-1000