OUTTEN & GOLDEN LLP
Adam T. Klein (AK 3293)
Jack A. Raisner (JR 6171)
Carmelyn P. Malalis (CM 3350)
Lauren E. Schwartzreich (LS 8260)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

NICHOLS KASTER, PLLP
Donald H. Nichols, MN Bar No. 78918
(admitted *pro hac vice*)
Paul J. Lukas, MN Bar No. 22084X
(admitted *pro hac vice*)
Tim Selander, MN Bar No. 0387016
(*admitted pro hac vice*)
4600 IDS Center, 80 South 8th Street
Minneapolis, M 55402
Telephone: (612) 256-3200

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEWONE WESTERFIELD, CHARLOTTE MACHADO, JOHN MCMACKIN, NICOLE MCMACKIN, TRIG MAGELSSEN, PATRICIA KEMESIES, SAMUEL SANCHEZ,  STEPHEN CAGNACCI, DERRICK RUDOLPH, JOHN RA, MARK JOHNSON, LOUISE KAPLAN, RAFAEL GUTIERREZ, on behalf of themselves and classes of those similarly situated,<br><br>      Plaintiffs,<br><br> v.<br><br>WASHINGTON MUTUAL BANK,<br><br>      Defendant. | No. 06-CV-2817 (CBA)(JMA) |

| |  |
|---|---|
| CESAR C. JORDAN, individually and on behalf of all other similarly situated employees,<br><br>    Plaintiffs,<br><br>  v.<br><br>WASHINGTON MUTUAL BANK,<br><br>    Defendant. | No. 08 Civ. 00287 (CBA)(JMA) |

**DECLARATION OF ADAM T. KLEIN IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES, ENHANCEMENT AWARDS, AND REIMBURSEMENT OF EXPENSES**

I, Adam T. Klein, declare as follows:

  1. I am a partner in the firm of Outten & Golden LLP ("O&G") in New York, New York, Plaintiffs' counsel herein, and co-chair of its Class Action Practice Group. O&G is a 25+ attorney firm based in New York City that focuses on representing plaintiffs in a wide variety of employment matters, including individual and class-wide violations of wage and hour laws, discrimination and harassment based on sex, race, disability, or age, retaliation, and contract and severance negotiations.

  2. I have been one of the lawyers primarily responsible for the prosecution of Plaintiffs' claims on behalf of the proposed class against Defendant.

  3. I make these statements based on personal knowledge and would so testify if called as a witness at trial.

**Time Spent on the Litigation**

  4. O&G has experience prosecuting large scale wage and hour class and collective actions such as this. O&G and Nichols Kaster, PLLP ("NK")'s experienced

2

representation in this case was directly responsible for bringing about the positive settlement and weighs in favor of granting the requested fees.

5. As of September 18, 2009, O&G & NK had spent more than 19,737 hours over three years litigating and settling these cases, which includes more than 9,815 attorney hours, 1059 law clerk hours, and 8862 paralegal and administrative hours.

6. The hours reported are reasonable for cases of this complexity and magnitude and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the cases.

7. Although O&G and NK are relatively large for plaintiffs' side employment law firms, a small team of attorneys and staff were utilized at any one time in order to minimize duplication of efforts and maximize billing judgment. We also made every effort to have work performed by the attorney or paralegal with the lowest hourly rate who was able to effectively perform it.

8. As of September 18, 2009, our total lodestar on the cases is $5,673,473.81. We also fronted approximately $352,510.90 in out-of-pocket costs, which were incidental and necessary to the representation of the Class, and include costs for witness fees, court reporters, expert fees, mediation, telephone charges, postage, transportation, working meals, photocopies, electronic research, and more. Attached as **Exhibit A** is a summary of all our costs and all of the time spent by attorneys and paralegals on the cases. Class Counsel's request for 30% of the fund is approximately double their lodestar, far less than what Courts have awarded in similar cases. Courts routinely award lawyers 2-3 times their actual lodestar amounts in class action settlements.

9. Attached as **Exhibit B** are our contemporaneous time records for the cases.

10. The requested attorneys' fees are not based solely on time and effort already expended; rather, they are also meant to compensate O&G and NK for time Class Counsel will be required to spend administering the settlement in the future. (Ex. C (Stlmt. Agmt.) ¶ 3.2.) In our experience, administering class settlements of this nature and size requires a substantial and ongoing commitment. For example, many of the Class Members who have received notice have had questions regarding the settlement. In fact, since the Notice was sent out to the Class Members, Class Counsel (and staff) have expended dozens of hours responding to questions about the case and will continue to do so as the settlement administration continues. Attached hereto as **Exhibit C** is a true and correct copy of the Joint Stipulation of Settlement and Release ("Stlmt. Agmt.").

**Risk of Litigation**

11. O&G and NK undertook to prosecute these actions without an assurance of payment for their services, litigating these cases on a wholly contingent basis in the face of tremendous risk. Large-scale wage and hour cases of this type are, by their very nature, complicated and time-consuming. Lawyers undertaking representation of large numbers of affected employees in wage and hour actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Class Counsel stood to gain nothing in the event these cases were unsuccessful.

12. To date, O&G and NK have worked without compensation of any kind, and the fee has been wholly contingent upon the result achieved.

13. The facts and circumstances of these cases presented numerous and substantial hurdles to a successful recovery of unpaid wages.  For example, the absence of accurate time records not only contributed to the complexity of this case, but also presented a significant hurdle to successful litigation.  In the absence of accurate time records that can easily corroborate and verify the claims of hours worked by employees, such claims can be disputed through the testimony of Defendant's managers and supervisors.  Such testimony and the resultant credibility issues create a significant risk if these matters proceeded to trial.

14. O&G and NK also faced the real possibility that they would never recover fees or expenses given that Washington Mutual went into receivership.  Plaintiffs faced the risk that JPMorgan Chase Bank, N.A., would argue that Washington Mutual's liability to Plaintiffs conveyed to the FDIC and not to JPMorgan Chase Bank, N.A.[1]  Because of this very real possibility, we had to expend additional time and resources to determine whether JPMorgan Chase Bank, N.A. is obligated to defend these actions.

**Investigation and Filing Complaints**

15. After conducting a thorough investigation, which included face-to-face meetings with dozens of Class Members in individual and group settings, substantial legal research, and numerous conversations with colleagues, O&G and NK agreed to prosecute these complex federal and nine-state wage-and-hour class actions.

---

[1] Although the FDIC has preliminarily taken the position that JPMorgan Chase Bank, N.A. acquired liability for Plaintiffs' claims, JPMorgan Chase Bank, N.A., has contested, and could continue to contest, the FDIC's position.

5

16. We selected several Named Plaintiffs from the group of workers and entered into retainer agreements with them.

17. We filed the initial complaint on June 5, 2006. Soon after filing the complaint, and after some favorable media coverage, dozens of other Loan Consultants joined the case as opt-in plaintiffs. We several held in-person information sessions with these workers and their colleagues and interviewed many of them.

18. Throughout this matter, we conducted formal interviews of more than 4,260 Loan Consultants to determine the hours that they worked, the wages they were paid, their job duties, and other information relevant to their claims. From these interviews, we obtained supportive declarations from 117 Loan Consultants.

19. In addition to the Named Plaintiffs, 1,067 individuals have joined these cases as "opt-in" plaintiffs under the Fair Labor Standards Act ("FLSA").

20. By January of 2008, we had amended the complaint in the *Westerfield* action three times, adding additional named plaintiffs from additional states.

21. O&G and NK spent approximately 3,520 attorney and paralegal hours performing their fact investigation, performing initial legal research, and drafting the four complaints.

**Discovery**

22. O&G and NK thoroughly investigated and prosecuted these complex actions. Washington Mutual produced, and Petitioners reviewed, thousands of documents relating to Washington Mutual's pay policies, employee policies, Loan Consultants' job duties and Plaintiffs' personnel records. Washington Mutual also produced payroll data for more than 1,000 Plaintiffs and more than 3,000 class members that Petitioners analyzed.

23. On July 28, 2008, the Court ordered Washington Mutual to produce redacted loan applications, or Form 1003s, submitted by Plaintiffs during their employment with Washington Mutual, which also had to be analyzed by us.

24. Responding to discovery demands by Washington Mutual also required enormous resources. We obtained interrogatory responses to Washington Mutual demands for 764 plaintiffs, including an additional 534 supplemental interrogatories, and coordinated the production of 551 plaintiffs' documents related to their work for Washington Mutual.

25. Because Washington Mutual demanded to take the depositions of over 300 plaintiffs, attorneys for O&G and NK were required to travel to 17 states to take or defend a total of 57 Plaintiff depositions, 17 depositions of Loan Consultants' managers and supervisors, and depositions of two Rule 30(b)(6) witnesses. Because substantial and significant discovery requests were in dispute, the parties had to attend 27 court conferences, which required multiple rulings from the Court in order for Plaintiffs to be able to prove their case.

26. Additionally, Petitioners were required to litigate extensive motion practice to successfully prosecute this action, including approximately fifty-nine (59) motions and letter-motions, some of which required decisions by the Court, as well as a successful motion for collective-action certification and a motion for preliminary approval of Class Settlement. Moreover, in order to reach settlement between the parties, we prepared and attended five mediation sessions with three separate mediators and multiple court conferences and settlement hearings.

27. O&G and NK spent approximately 11,500 attorney and paralegal hours on discovery.

**Settlement Process**

28. The parties reached this settlement under the supervision of an experienced employment mediator, Michael E. Dickstein of Dickstein Dispute Resolution/MEDiate, after three mediation sessions with two other experienced mediators failed over the course of almost two years.

29. In an attempt to resolve the *Westerfield* action, the parties attended their first mediation session in New York, New York on July 24, 2007, with the assistance of experienced employment mediator Hunter Hughes of Rogers & Hardin, LLP. The parties exchanged information, including some payroll data which the parties analyzed and for which Plaintiffs' counsel obtained the assistance of a professional statistician. After a full day of negotiating without a resolution, the parties and Mr. Hughes agreed to reconvene the mediation in San Francisco, California on August 14, 2007. Despite that second session, the parties were unable to reach an agreement and thereafter continued to aggressively pursue discovery in *Westerfield*, while Plaintiffs also filed the *Jordan* action.

30. In December 2008, during the Court's stay of discovery in both actions, the parties attempted mediation of both *Westerfield* and *Jordan*. This time the parties enlisted experienced employment mediator, Joan S. Morrow, to assist with their mediation in Washington, D.C. from December 17 through 19, 2008. In preparation for the mediation sessions with Ms. Morrow, O&G and NK analyzed deposition testimony and documentary evidence, and further outlined and debated evolving pertinent case law. Nevertheless, the three-day mediation session ended without agreement.

31. On January 23, 2009, the Court lifted the stay of discovery in *Westerfield*, and the parties again agreed to engage in a fourth mediation session, which took place in Los Angeles, California with the assistance of Mr. Dickstein. After a full day of mediation that extended late into the evening, the parties reached an agreement on March

26, 2009 and executed a Memorandum of Understanding ("MOU") setting forth the key material terms to the settlement.

32.     O&G and NK spent approximately 2,400 attorney and paralegal hours in settlement negotiations and procuring information for the settlement process.

**Preliminary Approval Motion**

33.     On June 24, 2009, the Court held a conference during which it granted us permission to file Plaintiffs' Motion for Preliminary Approval of Settlement.

34.     On June 19, 2009, we filed Plaintiffs' Motion for Preliminary Approval of Settlement in which they requested, among other things, that the Court grant preliminary approval of the Settlement Agreement, provisionally certify the proposed settlement class, appoint O&G and NK as Co-Lead Class Counsel, and approve the Notice.

35.     On June 24, 2009, the Court granted Plaintiffs' Motion for Preliminary Approval.

36.     O&G and NK spent approximately 380 attorney and paralegal hours on the preliminary approval process.

**Notice Process**

37.     Pursuant to the terms of the Settlement Agreement, the parties retained Rust Consulting, Inc. as the claims administrator ("Claims Administrator").

38.     For months, Co-Lead Class Counsel worked with the Claims Administrator and Defendant to ensure that the Claims Administrator had all of the data necessary to send notice to the Class and apply the allocation formula.   Attached hereto as **Exhibit D** is a true and correct copy of the Notice of Class Action Settlement ("Notice").

9

39. O&G and NK have already received at least 760 calls and emails from Class Members and Class Representatives with questions about the settlement. We expect to receive dozens more after final approval, especially after the first round of checks are issued.

40. O&G and NK have spent 290 attorney and paralegal hours on the notice process to date. We expect to spend dozens more hours handling questions from Class Members about their checks and addressing other issues that arise throughout the payment period, which does not end until 180 days following the date the checks are mailed to Class Members.

41. The average settlement for the 3,141 Class Members who filed Claim Forms and Release is more than $7,109.30 plus interest before attorneys' fees and costs are deducted.

### Objections

42. No Class Members objected to the substance of the settlement. To date, only one settlement class member has filed an objection to the settlement. The objection relates to the proper calculation of her entitlement to payment based on dates of employment. Plaintiffs' counsel is in the process of verifying the accuracy of the dates of employment for this particular settlement class member and will modify the calculation in the event of an error.

### Final Approval Motion

43. On September 21, 2009, we filed Plaintiffs' Motion for Certification of a Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Final Approval Motion"), in which we requested, among other things,

that the Court certify the settlement class; approve as fair and adequate the class-wide settlement of this action set forth in the Settlement Agreement; and approve the FLSA Settlement.

44.     O&G and NK spent approximately 360 attorney and paralegal hours on the final approval process.

**<u>Work of Class Representatives and Deposed Plaintiffs</u>**

45.     The Class Representatives have worked hard on behalf of Class Members in this case. They discussed with Co-Lead Class Counsel case strategy, informed Class Members of their right to join the lawsuit, encouraged Class Members to participate in the lawsuit, helped identify and local potential Class Members, answered factual questions for Co-Lead Class Counsel, signed declarations, appeared for depositions, contacted witnesses, produced documents, and generally relayed information to Class Members throughout the three years that these actions have been pending.

46.     The Class Representatives were integral in initiating these class actions and made significant contributions to the prosecution of this litigation. In addition to providing valuable assistance and guidance to Co-Lead Class Counsel, they participated in discovery, settlement negotiations and strategy, and discharged their obligations to the class with diligence and through a substantial commitment of time and energy.

47.     The Class Members who were served deposition notices from Washington Mutual also deserve recognition for their effort and the value they added to prosecuting these claims. These Class Members met with us to prepare them for the deposition, as well as were deposed for up to one day each, taking time out of their work schedules to assist this lawsuit.

48.     The Class Members who responded to the discovery demands of Washington Mutual likewise deserve recognition for their efforts. These Class Members were required to answer multiple interrogatory questions and produce multiple

11

documents. Co-Lead Class Counsel had to interview them extensively over multiple telephone conferences to obtain this information for Washington Mutual.

49. Without the efforts of the Named Plaintiffs and these class members, these cases on behalf of the class would not have been brought and this settlement would not have been achieved.

50. No Class Member or Class Representative has objected to the service awards.

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 21st day of September, 2009
New York, New York.

    /s/ Adam T. Klein
Adam T. Klein
**Outten & Golden LLP**
3 Park Avenue, 29th Floor
New York, NY 10016
(212) 245-1000